## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DARYL WALTER,

        **Plaintiff,**

v.

JOSHUA SMITH, individually and in
his official capacity as an officer for the
Newton Police Department;
JOSH MILLSPAUGH, individually and
in his official capacity as a Sergeant for
the Newton Police Department;
CRAIG DUNLAVY, in his official
capacity as Chief of Police for the
Newton Police Department; and THE
CITY OF NEWTON, KANSAS,

        **Defendants.**

Case No. 21-1073-DDC-GEB

## MEMORANDUM AND ORDER

On March 31, 2019, City of Newton, Kansas police officers arrested plaintiff Daryl

Walter on suspicion of driving while intoxicated.  Officers initially stopped the vehicle for

failing to use a turn signal.  During the traffic stop, plaintiff admitted to driving home from a bar,

where he had consumed one beer.  Officers gave him several field sobriety tests[1] to ensure

plaintiff could drive home safely.  Before officers administered the tests, plaintiff informed them

that he had undergone shoulder surgery on his right shoulder several weeks earlier.  Plaintiff

failed all administered field sobriety tests.  Also, he failed to give officers a sufficient

---

[1] Some ambiguity exists about how many field sobriety tests the officers applied to plaintiff.
*Compare* Doc. 35 at 7 (Am. Pretrial Order ¶ 3.b.) ("Plaintiff Walter proceeded to fail the four sobriety
tests[.]") *and* Doc. 50 (Pl.'s Reply ¶ 21) ("Plaintiff submitted to and is alleged to have failed four field
sobriety tests."), *with* Doc. 53 at 1 (Defs.' Reply to Pl.'s Resp.) ("Plaintiff failed three standardized field
sobriety tests[.]").  The court's inability to reconcile this fact does not change its decision.  To the extent it
must adopt one version of the facts, this court accepts the version on the record most favorable to
plaintiff.

Breathalyzer sample.  When officers placed plaintiff's arms behind his back to cuff him, plaintiff complained that he could not rotate his shoulder behind his back due to his recent surgery. Officers responded by double cuffing plaintiff to transport him to the Harvey County Intoxilizer room.  There, plaintiff registered above the legal limit.  Later, the City of Newton charged him with driving under the influence.  Plaintiff entered a diversion agreement with the city on August 1, 2019.

Plaintiff brings this action alleging unlawful arrest and use of excessive force in his arrest, violating his Fourth Amendment rights.  Plaintiff asserts a federal claim under § 1983 and various state claims under Kansas law.  Defendants have moved for summary judgment against plaintiff's § 1983 claims.  Doc. 42.  For reasons explained by this order, the court grants defendants' Motion for Summary Judgment.

## I.      Uncontroverted Facts

The following facts are uncontroverted for purposes of the summary judgment motion or, where genuinely controverted, are viewed in the light most favorable to plaintiff—the party opposing summary judgment.[2]  *Scott v. Harris*, 550 U.S. 372, 378–80 (2007).

---

[2]      When the court applies this standard, it considers only the evidence properly submitted by the parties on summary judgment.  Plaintiff's Response to defendants' Motion for Summary Judgment cites his own factual allegations in the Amended Pretrial Order as support for his additional statements of fact. *See* Doc. 50 at 10 (¶¶ 33, 35).  But, plaintiff never supports these *allegations* with summary judgment *evidence* that the court can properly consider on this motion.  *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party asserting that a fact is or is not genuinely disputed "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials").

Also, the parties have stipulated to the court considering video evidence on this summary judgment motion.  *See* Doc. 35 at 3 (explaining that the parties "have stipulated to the admissibility" of police body-cam footage, police dash-cam footage, and jail footage "for purposes of summary judgment and trial").  The Supreme Court has instructed that when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Instead, the court must view "the facts in the light depicted by the

Shortly after midnight on March 31, 2019, Newton Police Officer Smith conducted a traffic stop on plaintiff Daryl Walter for failing to use a turn signal.  Doc. 35 at 2–3 (Am. Pretrial Order ¶¶ 2.a.i.–ii.); Doc. 43-4 at 1 (Smith Decl. ¶¶ 1–2); Doc. 43-1 at 1 (Smith Report).  Officer Smith approached the car and asked the driver for his driver's license, whom he identified as plaintiff.  Defs.' Ex. 1 (Smith Body Camera 0:00:29–0:00:59).[3]  Officer Smith checked plaintiff's license and registration and found that he had no outstanding warrants or holds.  *Id.* (Smith Body Camera 0:01:22–0:02:14).  Newton Police Sergeant Millspaugh joined Officer Smith shortly thereafter as back-up.  *Id.* (Smith Body Camera 0:02:14); *see also* Doc 43-1 at 1.  Officer Smith spoke with Sergeant Millspaugh about the reason for the traffic stop and his suspicion that plaintiff perhaps was driving while intoxicated.  Defs.' Ex. 1 (Smith Body Camera 0:02:25–0:02:45).  Sergeant Millspaugh gave some tips to Officer Smith on how to proceed with the investigation.  *Id.* (Smith Body Camera 0:02:45–0:03:45).

Officer Smith then returned to plaintiff's car to ask for his insurance card and some additional questions.  *Id.* (Smith Body Camera 0:03:45–0:05:12).  Officer Smith asked where plaintiff was coming from, and plaintiff admitted that he had just come from a local bar where he had had one beer.  *Id.* (Smith Body Camera 0:04:36–0:05:12).  Officer Smith left plaintiff's car, taking plaintiff's insurance card with him.  He reported plaintiff's admission to Sergeant Millspaugh.  *Id.* (Smith Body Camera 0:05:17–0:05:25).  Sergeant Millspaugh suggested that

---

videotape."  *Id.* at 380–81.  The court adheres to that instruction when reciting the summary judgment facts here.

[3]      Defendants conventionally filed Exhibits 1 through 5.  *See* Doc. 39 (Order granting Motion for Leave to File Exhibits 1, 2, 3, 4, and 5 conventionally).  Each of these exhibits is a video recording which defendants could not file electronically, so they don't have corresponding docket numbers on the court's electronic CM/ECF docket.

Officer Smith have plaintiff step out of the car for further evaluation. *Id.* (Smith Body Camera 0:05:25–0:06:39).

Officer Smith then went back to the car and asked plaintiff to step out of his car for further questioning. *Id.* (Smith Body Camera 0:07:58–0:09:20). Sergeant Millspaugh, Officer Smith, and plaintiff talked for about two minutes near the trunk of plaintiff's car. *Id.* (Smith Body Camera 0:07:58–0:09:20). At the end of the conversation, Sergeant Millspaugh told plaintiff that he wanted him to perform some field sobriety tests to make sure he could drive home safely. *Id.* (Smith Body Camera 0:09:20–0:09:21). Plaintiff agreed to participate in the tests. *Id.*

As Officer Smith instructed plaintiff on the first test, plaintiff noted that he had undergone shoulder surgery seven weeks earlier and had little range of motion in his left arm. *Id.* (Smith Body Camera 0:09:43–0:09:45). Officer Smith briefly acknowledged the limitation, then proceeded to administer the tests. *Id.* (Smith Body Camera 0:09:45–0:09:51). Plaintiff mentioned his restriction again when Officer Smith gave plaintiff instructions on the third test. *Id.* (Smith Body Camera 0:17:13–0:17:18). Officer Smith acknowledged the restriction again, telling plaintiff he would not need to use his arm during the test. *Id.* Newton Police Officer Hinton arrived on scene sometime during the field sobriety tests and provided additional backup. Doc. 43-1 at 3.

Plaintiff performed the tests as Officer Smith instructed, but he failed all of them. Defs.' Ex. 1 (Smith Body Camera 0:10:00–0:20:53). Because he failed the tests, Officer Smith asked plaintiff if he would take a Breathalyzer. *Id.* (Smith Body Camera 0:20:53–0:20:57). Plaintiff asked whether he had passed any of the tests and briefly questioned the officer about his options, but ultimately complied. *Id.* (Smith Body Camera 0:21:56–0:25:27). Plaintiff attempted the

Breathalyzer twice, but he could not provide a sufficient sample for the test. *Id.* (Smith Body Camera 0:21:53–0:26:04). Because plaintiff could not provide sufficient samples, Sergeant Millspaugh ended the test and arrested plaintiff for a suspected criminal infraction for driving while intoxicated (DUI). *Id.* (Smith Body Camera 0:26:25–0:26:30). Sergeant Millspaugh tried to pull plaintiff's arms behind his back. Defs.' Ex. 2 (Hinton Body Camera 0:02:00–0:02:06). Plaintiff twisted his left arm away from Sergeant Millspaugh, claiming he was in pain because of his recent shoulder surgery. *Id.* Officer Smith and Sergeant Millspaugh then double-cuffed plaintiff to transport him to the Intoxilizer room at the Harvey County Jail. *Id.* (Hinton Body Camera 0:02:15–0:02:58).

At the Intoxilizer room, Officer Smith administered another sobriety test. Defs.' Ex. 1 (Smith Body Camera 1:13:51–1:18:02). The test returned results showing that plaintiff had a blood-alcohol content of 0.08 (BAC). *Id.* (Smith Body Camera 1:17:49–1:18:02). Under Newton City Ordinance, STO § 30(a)(2), a person operating a vehicle within three hours at .08 or more BAC unlawfully drives under the influence. Doc. 43-5 (Municipal Court of Newton, Kansas Complaint and Notice to Appear). The City of Newton charged plaintiff with violation of two city ordinances: (1) driving under the influence, and (2) a turn signal violation. *Id.* On August 1, 2019, plaintiff entered a 12-month diversion agreement with the City of Newton on the DUI charge. Doc. 43-8 (Diversion Agreement).

Plaintiff since has filed this action. It claims that defendants violated his Fourth Amendment rights protecting him from unreasonable search and seizure. He asserts federal law claims under 42 U.S.C. § 1983 and Kansas law claims for battery, negligence, negligent infliction of emotional distress, and violation of Kan. Stat. Ann. § 75-6103. Doc. 35 at 8–12 (Am. Pretrial Order ¶ 4.a.).

II.     **Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When it applies this standard, the court "view[s] the evidence and make[s] inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1150 (D. Kan. 2012) ("An issue of fact is genuine if the evidence allows a reasonable jury to resolve the issue either way." (citation and internal quotation marks omitted)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Nahno-Lopez*, 625 F.3d at 1283 (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)); *see also Anderson*, 477 U.S. at 248 (explaining a material issue of fact is one that "affect[s] the outcome of the suit under the governing law").

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO*,

*Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)); *see also In re Urethane Antitrust Litig.*, 913 F.

Supp. 2d at 1150 (explaining that "a movant [who] does not bear the ultimate burden of

persuasion at trial need not negate the other party's claim; rather, the movant need simply point

out to the court a lack of evidence for the other party on an essential element of that party's

claim" (citation omitted)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its

pleadings, but must bring forward specific facts showing a genuine issue for trial as to those

dispositive matters for which it carries the burden of proof.'" *Kannady*, 590 F.3d at

1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp.*, 477

U.S. at 324; *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by

reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*,

144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th

Cir.), *cert. denied*, 506 U.S. 1013 (1992)); *see also Celotex Corp.*, 477 U.S. at 324 (explaining

the nonmovant must "go beyond the pleadings and by [its] own affidavits, or by the depositions,

answers to interrogatories, and admissions on file, designate specific facts showing that there is a

genuine issue for trial" (citations and internal quotation marks omitted)). When deciding

whether the parties have shouldered their summary judgment burdens, "the judge's function" is

not "weigh[ing] the evidence and determin[ing] the truth of the matter but to determine whether

there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Finally, summary judgment is not a "disfavored procedural shortcut." *Celotex Corp.*, 477

U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and

inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1). "The very purpose

of a summary judgment action is to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

## III.    Analysis

Defendants ask the court to grant summary judgment against plaintiff's § 1983 claim for two reasons. *First*, the individual defendants, Officer Smith and Sergeant Millspaugh, argue they are entitled to qualified immunity as a matter of law.[4]  Plaintiff contends that Sergeant Millspaugh and Officer Smith violated his Fourth Amendment rights by using excessive force and arresting him unlawfully. Defendants disagree, arguing that the summary judgment facts present no genuine dispute whether the officers lawfully arrested plaintiff or used excessive force when making the arrest. Thus, defendants argue, they deserve qualified immunity because the summary judgment record presents no jury question whether they violated plaintiff's constitutional rights under the Fourth Amendment. Defendants also argue that even if they did violate plaintiff's constitutional rights, such a right was not "clearly established" at the time of his arrest. *Second*, defendants argue that plaintiff has not come forward with a triable issue

---

[4]      Defendants allege that Chief Dunlavy is entitled to qualified immunity as a matter of law as well, but plaintiff isn't suing Chief Dunlavy in his individual capacity under § 1983. Doc. 35 at 9–10 (Am. Pretrial Order ¶ 4.a.i.1.). Instead, plaintiff sues Chief Dunlavy in his official capacity for failure to train. *Id.* Defendants allege that there is some ambiguity whether plaintiff sues Chief Dunlavy in his individual *and* official capacity, or merely in his official capacity. Doc. 44 at 17 (Mem. in Supp. of Defs.' Mot. for Summ. J.).

To the extent that any ambiguity exists whether plaintiff has sued Chief Dunlavy in his individual capacity, Chief Dunlavy is entitled to qualified immunity because he cannot incur § 1983 liability under a respondeat superior theory. *Crews v. Paine*, 686 F. App'x 540, 546 (10th Cir. 2017). The summary judgment facts present no triable issue whether Chief Dunlavy personally violated plaintiff's constitutional rights. Indeed, the summary judgment facts establish that Chief Dunlavy never participated in plaintiff's traffic stop or arrest. Instead, Chief Dunlavy's subordinates allegedly committed the constitutional violations. The Tenth Circuit has stated that holding an official liable for the actions of his subordinates "would appear contrary to basic limits on personal liability under § 1983, which, eschewing principles of respondeat superior, make 'each Government official . . . only liable for his or her own misconduct.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

whether a policy or custom of the City of Newton or from Chief Dunlavy that caused any constitutional harm to plaintiff.  The court considers each argument in turn.[5]

### A. Qualified Immunity for Officer Smith and Sergeant Millspaugh

Plaintiff rests his § 1983 claim solely on his arrest for a suspected DUI and the officers' alleged use of force when making that arrest.  Plaintiff alleges Officer Smith and Sergeant Millspaugh violated his Fourth Amendment right protecting him from unreasonable search and seizure when they arrested him without probable cause.  Plaintiff concedes that defendants were justified in their initial *Terry* stop of his vehicle.  Doc. 50 at 14.  But, he argues defendants' reasonable suspicion evaporated when plaintiff showed no external signs of intoxication during the officer's *Terry* investigation.  *Id.*  Also, plaintiff argues that defendants used excessive force when arresting him.  *Id.* at 20.  Defendants assert a qualified immunity defense to plaintiff's § 1983 claims based on these alleged Fourth Amendment violations.  Doc. 35 at 12.  The court addresses defendants' qualified immunity argument, below.  This analysis begins with the governing legal standard for the qualified immunity defense.  Then, the court applies the qualified immunity defense to plaintiff's § 1983 claims alleging Fourth Amendment violations based on an unlawful arrest and use of excessive force.

### 1. Qualified Immunity Standard

---

[5] Defendants' Reply asserts—for the first time—that the doctrine of collateral estoppel precludes plaintiff's claims as well.  Doc. 53 at 9.  Defendants assert that plaintiff's diversion agreement with the City of Newton precludes him from suing defendants under § 1983 because his diversion agreement stipulated to the facts upon which the DUI charge was based.  *Id.* at 9–11.  While this argument has considerable appeal, the court can't consider this argument because defendants raised it for the first time in their Reply.  Our court has held that arguments raised for the first time in a reply are not proper.  *See National R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, Case No. 16-cv-1094-JTM-TJJ, 2018 WL 489100 (D. Kan. Jan. 19, 2018) ("[T]he Court will not consider arguments raised for the first time in a reply brief, particularly where the arguments could have been made in the first instance"); *Employers Mut. Cas. Co. v. Miner*, 6 F. Supp. 2d 1232, n.5 (D. Kan. 1998) ("[A district] court will not grant summary judgment based on an issue raised for the first time in a reply brief.").  Thus, the court won't consider defendants' collateral estoppel argument because they haven't raised it in a timely fashion.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)).  Qualified immunity is "'immunity from suit rather than a mere defense to liability.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  So, courts should resolve qualified immunity questions "'at the earliest possible stage in litigation.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

To establish a § 1983 claim against an individual defendant who asserts the defense of qualified immunity, plaintiffs must (1) come forward with facts that "make out a violation of a constitutional right[,]" and (2) demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  A court has discretion to determine "which of the two prongs of the qualified immunity analysis" to address first "in light of the circumstances in the particular case at hand." *Id.* at 236.  Addressing the clearly established question first "may avoid the risk of deciding a case incorrectly given insufficient briefing on the constitutional violation question." *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citing *Pearson*, 555 U.S. at 239).

Here, defendants assert that Officer Smith and Sergeant Millspaugh deserve qualified immunity under both prongs of the qualified immunity analysis.  The court agrees with them.  Plaintiff fails to present a triable issue whether defendants violated plaintiff's Fourth Amendment rights.  Thus, plaintiff fails to shoulder his burden to overcome defendants' qualified immunity defense under the first prong of the analysis.  Based on this conclusion, the court need not address the second prong of the qualified immunity analysis—*i.e.*, whether the right at issue was clearly established.

### 2.  Plaintiff's § 1983 Claim for Unlawful Arrest Violating the Fourth Amendment

Plaintiff asserts that Officer Smith and Sergeant Millspaugh violated his Fourth Amendment rights by seizing, detaining, and arresting him without probable cause.  Doc. 35 at 9 (Am. Pretrial Order ¶¶ 4.a.i.2.–3.).  The Fourth Amendment protects an individual's right "against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  A seizure is authorized when a warrant is issued, justified by probable cause, and describes the person to seize. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  But, under Kansas law, a law enforcement officer may arrest an individual—without a warrant—when the officer has probable cause to believe that the individual is committing or has committed a felony or, in some instances, a misdemeanor.  Kan. Stat. Ann. § 22-2401(c).  And, the Supreme Court has recognized, a "warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003).

"Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is

11

being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).  The dispositive question turns on whether a reasonable officer would believe that the person arrested was committing a crime, even if plaintiff did not truly commit a crime.  *Arroyo v. Starks*, No. 07-3298-SAC, 2011 WL 5024214, at *13 (D. Kan. Oct. 20, 2011); *see also United States v. Valenzuela*, 365 F.3d 892, 896–97 (10th Cir. 2004) ("Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." (citation and internal quotation marks omitted)).  "Probable cause only requires a probability of criminal activity, not a prima facie showing of such activity."  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

Plaintiff argues that Officer Smith and Sergeant Millspaugh had no basis to escalate the *Terry* stop, citing his natural conversation and movements when talking with the officers.  He argues that his behavior dissipated the officers' reasonable suspicion justifying the initial *Terry* stop.  Thus, plaintiff contends, defendants acted unreasonable when they arrested him.  The summary judgment evidence simply doesn't support plaintiff's assertions.

Instead, the summary judgment facts establish that Officer Smith pulled plaintiff over for failing to use a turn signal, a traffic infraction in the City of Newton.  Plaintiff has stipulated that the officers based the initial traffic stop on a traffic infraction—*i.e.*, failing to use a turn signal— that evolved into an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968).  Doc. 35 at 3 (Am. Pretrial Order ¶ 2.a.ii.).  During the traffic stop, plaintiff admitted to Officer Smith that he just had left a local bar where he drank a single beer.  To determine whether plaintiff was driving under the influence, Officer Smith asked plaintiff to perform several field sobriety tests.  The

summary judgment facts show that plaintiff voluntarily performed all sobriety tests that Officer Smith asked him to perform.  Plaintiff failed all the tests, which then prompted Officer Smith to ask plaintiff to take a Breathalyzer test.  Then, plaintiff failed to give a sufficient sample to perform the Breathalyzer test.  No reasonable jury could find or infer from these summary judgment facts that Officer Smith lacked probable cause.  Instead, these facts demonstrate that Officer Smith's investigation naturally evolved to support a probable cause finding that plaintiff was driving under the influence.

Also, the summary judgment record establishes that Sergeant Millspaugh arrived on the scene shortly after Officer Smith initiated the traffic stop.  Officer Smith told Sergeant Millspaugh about plaintiff's admission to consuming one beer.  Sergeant Millspaugh recommended that Officer Smith ask plaintiff to step out of his vehicle to investigate his suspicions further.  Again, plaintiff did so willingly.  Sergeant Millspaugh then watched as plaintiff failed all the field sobriety tests and submit an insufficient sample for the Breathalyzer test.

These undisputed facts—plaintiff's admission to drinking a beer at a bar, failing the field sobriety tests, and his inability to give a sufficient sample for the Breathalyzer test—gave Officer Smith and Sergeant Millspaugh probable cause to arrest plaintiff for driving under the influence. *See, e.g.*, *Mason v. Stock*, 955 F. Supp. 1293, 1304 (D. Kan. 1997) (holding that plaintiff's "driving, his difficulty communicating with [police officer], his admission of having something to drink, and his refusal to take a field sobriety test gave [the officer] probable cause to arrest [plaintiff] for driving under the influence of alcohol[,]" and, as a consequence, the officer "did not violate [plaintiff's] Fourth Amendment rights in connection with his arrest on the DUI charge and [was] entitled to qualified immunity").  Thus, Officer Smith and Sergeant Millspaugh didn't

violate plaintiff's Fourth Amendment rights when they arrested him.  For this reason, plaintiff can't satisfy his burden of "mak[ing] out a violation of a constitutional right" sufficient to overcome the first prong of the qualified immunity defense.  *Pearson*, 555 U.S. at 232.  Thus, Officer Smith and Sergeant Millspaugh are entitled to qualified immunity against plaintiff's § 1983 claim based on an alleged unlawful arrest.

### 3. Plaintiff's § 1983 Claim for Excessive Force Violating the Fourth Amendment

Plaintiff next contends that Officer Smith and Sergeant Millspaugh violated his Fourth Amendment rights by using excessive force against him during his arrest. Doc. 35 at 9.  A claim that law enforcement officers have used excessive force to effect a seizure is governed by the Fourth Amendment's "reasonableness" standard.  *Cnty. of L.A. v. Mendez*, 137 S. Ct. 1539, 1546 (2017); *Estate of Larsen ex. rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (further citation and internal quotation marks omitted)).  When performing this analysis, the court must pay "careful attention to the facts and circumstances of each particular case, including the [(1)] severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*

Even when these three *Graham* factors favor a finding that the force was used unreasonably, they don't end the inquiry in cases where, like this one, plaintiff challenges the "[m]anner or course of handcuffing[.]"  *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir.

2020) (citation and internal quotation marks omitted); *see also Koch v. City of Del City*, 660 F.3d 1228, 1247 (10th Cir. 2011) ("In cases in which 'the handcuffing is permissible yet the *manner* of handcuffing may render the application of force excessive,'" *Graham*'s "'factors are less helpful in evaluating the *degree* of force applied.'" (quoting *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009))).

In such a case, where an "excessive force claim that includes a challenge to the '[m]anner or course of handcuffing'" is brought by the plaintiff, the court "requires the plaintiff to show both that [(1)] 'the force used was more than reasonably necessary' and [(2)] 'some non-de minimis actual injury.'" *Donahue*, 948 F.3d at 1196 (quoting *Fisher*, 584 F.3d at 897–98). Here, the summary judgment facts don't present a triable issue on either requirement.

*First*, the undisputed summary judgment facts present no jury issue on the first requirement. No reasonable jury could conclude from the summary judgment facts—viewed in plaintiff's favor—that Officer Smith and Sergeant Millspaugh used force that "'was more than reasonably necessary[.]'" *Donahue*, 948 F.3d at 1196 (quoting *Fisher*, 584 F.3d at 897–98). Instead, the summary judgment facts establish that Officer Smith and Sergeant Millspaugh took steps to accommodate plaintiff's injured shoulder when they conducted the field sobriety tests and when they arrested him. When plaintiff pulled away from Sergeant Millspaugh's grip out of fear of re-injuring his shoulder, Officer Smith double-cuffed plaintiff. The video evidence explicitly shows Officer Smith double cuffing plaintiff, then helping to settle plaintiff safely in the car before taking him to the Harvey County Intoxilizer room. From these undisputed facts, no reasonable jury could conclude that the officers used more force than was reasonably necessary when they arrested and transported plaintiff to the Harvey County Jail.

Turning to the second requirement, plaintiff hasn't come forward with any admissible evidence supporting a finding that plaintiff sustained "some non-de minimus actual injury[.]" *Fisher*, 584 F.3d at 898. Although his Response to defendants' Motion for Summary Judgment makes conclusory assertions of injury, *see* Doc. 50 at 10, 11 (¶¶ 35, 46), plaintiff never supports his assertions by citing admissible *evidence* to support those assertions. Thus, no reasonable jury could conclude from the summary judgment record that plaintiff sustained an injury sufficient to support an excessive force claim against Officer Smith or Sergeant Millspaugh.

In sum, the summary judgment record presents no triable issue whether Officer Smith or Sergeant Millspaugh used excessive force violating plaintiff's Fourth Amendment rights. As a consequence, plaintiff hasn't shouldered his burden to make out a triable issue on a constitutional violation sufficient to overcome defendants' qualified immunity defense. Officer Smith and Sergeant Millpaugh thus deserve qualified immunity against plaintiff's § 1983 claims based on excessive force. The court grants summary judgment against plaintiff's § 1983 claims asserted against Officer Smith and Sergeant Millspaugh.

## B. Plaintiff's § 1983 Claim Based on Failure to Train Against the City of Newton and Chief Dunlavy

Plaintiff also asserts a § 1983 claim against the City of Newton and Chief Dunlavy, in his official capacity,[6] for failing to train Newton police officers properly. Defendants argue they deserve summary judgment on this claim because plaintiff hasn't come forward with any evidence of an official policy or custom by the City of Newton or Chief Dunlavy that was the moving force behind any constitutional violation. They're right.

---

[6]     As already discussed, *see supra* note 3, plaintiff is suing Chief Dunlavy only in his official capacity and not his individual capacity. Doc. 35 at 9 (Pretrial Order ¶ 4.a.i.1.); *see also id.* at 1 (asserting in the caption of the Pretrial Order that plaintiff sues Dunlavy "in his Official Capacity as Chief of Police for the Newton Police Department").

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the Supreme Court explained when a municipality incurs liability under § 1983.  A plaintiff may not hold a municipality liable under § 1983 for constitutional torts committed by their employees under the doctrine of respondeat superior.  *Id.* at 663 n.7, 691–94 (citations omitted).  But still, the Court concluded, a municipality is a "person" to whom § 1983 applies.  *Id.* at 690.  And, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" § 1983 holds the government "as an entity [ ] responsible . . . ."  *Id.* at 694.  For example, a plaintiff may sue a municipality under § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers."  *Id.* at 690.  Or, a municipality may incur liability for a "constitutional deprivation[ ] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels."  *Id.* at 690–91.  In short, if a municipality's own policy or custom causes a violation of plaintiff's constitutional rights, a § 1983 plaintiff may hold the municipality itself liable for the constitutional violation.  *Id.* at 690–95; *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (explaining the requirement for "a plaintiff seeking to impose liability on a municipality" to identify a policy of the municipality that caused the injury "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality").

To prevail on a municipal liability claim, plaintiff must allege:  "(1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) the

policy or custom was the moving force behind the constitutional deprivation." *Crittenden v. City of Tahlequah*, 786 F. App'x 795, 800 (10th Cir. 2019) (citing *Monell*, 436 U.S. at 694); *see also Brown*, 520 U.S. at 404–05 (explaining that identifying a decision of a final policymaker alone is not enough to trigger municipal liability, a plaintiff also must show that "the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights"); *Carbajal v. McCann*, 808 F. App'x 620, 637–38 (10th Cir. 2020) (explaining plaintiff must show the existence of a municipal policy or custom and a direct causal link between that policy or custom and the alleged injury, and conclusory allegations of a policy or custom will not suffice to support a viable municipal liability claim under § 1983); *Scott v. City of Albuquerque*, 711 F. App'x 871, 883 (10th Cir. 2017) ("To establish the causation element, the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." (citations and internal quotation marks omitted)).

The Tenth Circuit has recognized five conventions that can qualify as a policy or custom:

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Crittenden*, 786 F. App'x at 800 (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).

"To establish municipal liability based on the failure to train theory, plaintiff must demonstrate the municipality or one of its employees, in his official capacity, "failed to adequately train or supervise" its supervisory employees "with deliberate indifference to the harms this failure might cause." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010); *see also Brown*, 520 U.S. at 405–415 (explaining an inadequate training claim can establish municipal liability in limited circumstances where plaintiff shows the municipality acted with deliberate indifference to an obvious consequence—a constitutional violation—and this conscious disregard for a known or obvious risk makes the failure to train or otherwise take action the cause of the plaintiff's injury); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) ("We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."); *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998), *superseded on other grounds by* 42 U.S.C. § 1997e (discussing legal standard for a municipal liability claim based on inadequate training under *Brown* and *City of Canton*).

Typically, to establish municipal liability for failing to train, a plaintiff must show "existence of a pattern of tortious conduct" and that the municipality failed to act, deliberately disregarding the risk of harm from such conduct. *Barney*, 143 F.3d at 1307–08. But, deliberate indifference also can exist without a "pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or in action[.]" *Id.* (quoting *Brown*, 520 U.S at 409); *see also Bryson*, 627 F.3d at 789 (concluding evidence did not support finding of deliberate indifference where the city had not received any complaints about forensic chemist's work when the alleged conduct occurred and her wrongful

actions were not otherwise a "highly predictable or a plainly obvious consequence" of the short training period and lack of meaningful supervision).

Here, plaintiff's § 1983 claim against the City of Newton and Office Dunlavy, in his official capacity, falls short of this standard for two reasons.

*First*, no municipal liability under § 1983 exists where the officers' actions did not cause a constitutional violation. *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1226, 1239 (10th Cir. 2020) (explaining that a municipality can incur liability for a constitutional violation only where plaintiff shows that an employee caused a constitutional violation under the municipality's policy); *see also Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (holding, where court found officers hadn't committed an "underlying constitutional violation," the "municipality may not be held liable"). As already discussed, plaintiff has failed to present a triable issue whether Officer Smith or Sergeant Millspaugh violated plaintiff's Fourth Amendment rights. They thus are entitled to summary judgment against plaintiff's § 1983 claims. This conclusion necessarily precludes § 1983 liability against the City of Newton or Chief Dunlavy in his official capacity. *See Hinton*, 997 F.2d at 782 (affirming summary judgment in favor of municipality where individual police officers' "conduct did not violate [plaintiff's] Fourth Amendment rights"); *see also Arnold v. City of Olathe, Kan.*, 550 F. Supp. 3d 969, 990 (D. Kan. 2021) (granting summary judgment against plaintiff's § 1983 claims based on supervisory and *Monell* liability because summary judgment evidence failed to present a triable issue whether individual officers had used excessive force and thus "there [was] no underlying constitutional violation").

*Second*, plaintiff has failed to come forward with evidence capable of supporting a finding or inference that the City of Newton adopted a municipal policy that Chief Dunlavy

followed in failing to train his officers.  Plaintiff argues that Sergeant Millspaugh's actions are reasonably guided and approved by Chief Dunlavy and the City of Newton in keeping with "unofficial customs and culture."  Doc. 50 at 21.  But plaintiff cites no summary judgment evidence to support his conclusory allegations.  These unsupported assertions don't support a finding or inference that the City of Newton or Chief Dunlay had "a municipal policy or custom by which the plaintiff was denied a constitutional right[.]"  *Crittenden*, 786 F. App'x at 800. Also, plaintiff's conclusory allegations don't qualify as evidence permitting a reasonable jury to find or infer "the existence of a pattern of tortious conduct" that the municipality failed to correct.  *Barney*, 143 F.3d at 1307–08.  No reasonable jury could find or infer from these facts that the City of Newton or Chief Dunlavy violated § 1983 by failing to train its officers.

In sum, plaintiff's § 1983 claims against the City of Newton and Chief Dunlavy in his official capacity fail for two separate and independently sufficient reasons.  Thus, defendants City of Newton and Chief Dunlavy deserve summary judgment against plaintiff's § 1983 claims.

## C.  Supplemental Jurisdiction

Because the court grants summary judgment against plaintiff's § 1983 claims—the only federal claims plaintiff asserts in this lawsuit—the court may decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [when] the district court has dismissed all claims over which it has original jurisdiction.").  Defendants' Motion for Summary Judgment explicitly asks the court to decline supplemental jurisdiction over plaintiff's state law claims and dismiss those claims without prejudice.  Doc. 44 at 25–26.

The decision whether to exercise supplemental jurisdiction in this circumstance is committed to the district court's sound discretion.  *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130,

1138–39 (10th Cir. 2004). But though the decision is a discretionary one, the Tenth Circuit has expressed the preference that a district court decline jurisdiction over state law claims when it dismisses all the federal claims. *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." (emphasis added)). The Supreme Court has directed district courts—when deciding whether to exercise supplemental jurisdiction over state law claims—to consider "the values of judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013) ("[W]e have said the court should consider retaining state claims when, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." (citation and internal quotation marks omitted)).

Exercising its discretion, the court declines to assert supplemental jurisdiction here over plaintiff's remaining state law claims. All four governing factors favor this outcome. Dismissing plaintiff's state law claims without prejudice will waste no judicial resources because discovery is complete and the case is ready for a summary judgment ruling or a trial in the state of Kansas.

This result is not unfair to plaintiff. He likely will face a stiff challenge to the timelines of the claim. *See* Kan. Stat. Ann. § 60-514(b) (establishing one year limitations period); *see also* Doc. 8 at 8 (Am. Compl. V.B) (alleging battery on Mar. 31, 2019) *and* Doc. 1 (suit filed on Mar. 19, 2021). But, the rest of his state law claims appear actionable pending federal court dismissal. 28 U.S.C. § 1367 tolls the statute of limitations for state law claims while they are pending in federal court and for 30 days after they are dismissed "unless State law provides for a longer

tolling period." 28 U.S.C. § 1367(d); *see also Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010), *abrogated on other grounds by Torres v. Madrid*, 141 S. Ct. 989 (2021). Kansas's "saving statute" affords a plaintiff six months to commence a new action if an earlier timely filed action has failed "otherwise than upon the merits[.]" Kan. Stat. Ann. § 60-518. A dismissal "otherwise than upon the merits" includes a dismissal without prejudice. *Rogers v. Williams, Larson, Voss, Strobel & Estes*, 777 P.2d 836, 839 (Kan. 1989). In sum, nothing known to the court will prevent plaintiff from refiling the rest of his state law claims in Kansas state court, so long as he complies with the tolling requirements.

The Kansas state courts also provide the same level of convenience and fairness as the federal courts. And, importantly, comity strongly favors remand. Kansas state courts have a strong interest in deciding matters involving purely state law claims such as the tort claims asserted here. *Brooks*, 614 F.3d at 1230 ("'[N]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'" (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995))).

Because all the factors favor dismissal without prejudice and there is no compelling reason to the contrary, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

## IV.   Conclusion

The court grants defendants' Motion for Summary Judgment. Defendants Smith and Millspaugh are entitled to qualified immunity against plaintiff's § 1983 claims. Also, plaintiff's claims against Chief Dunlavy and the City of Newton present no triable issue whether these defendants committed a *Monell* violation giving rise to municipal liability. Thus, the court

grants summary judgment against plaintiff's § 1983 claims against Chief Dunlavy and the City of Newton.

Because the court grants summary judgment against plaintiff's § 1983 claims, the only claims remaining in the case are plaintiff's Kansas law claims. The court declines to exercise supplemental jurisdiction over those Kansas claims. The court thus dismisses, without prejudice, plaintiff's Kansas law claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Summary Judgment (Doc. 42) is granted. The court dismisses plaintiff's federal § 1983 claims with prejudice. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims and dismisses the claims without prejudice. The court directs the Clerk of the Court to enter a judgment consistent with this Order.

**IT IS SO ORDERED**.

**Dated this 13th day of December, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**